Good morning. Katherine Elizabeth Wolford, a petitioner. This case involves a local permanent resident, a Chinese national, who faces deportation based on his conviction in Arizona of attempted production of marijuana. The issues before this court are constructed to be essentially the same that have always been before the agency, and that is whether or not he's removable for a controlled substance offense, whether or not his conviction constitutes an aggravated felony and in particular a serious crime, so as to render him ineligible for asylum and withholding of removal, and whether he merits those forms of relief as well as convention against torture. The government's argument is essentially that the petitioner has waived all of these arguments by failing to exhaust them. I want to ask, and I want to ask the government about that too, but your argument is that this is mainly bravado affirms. Well, yes, but it goes beyond that. Okay, but let's assume that the arguments were not made. Okay, yes. If they were exhausted, because that's my first evidence. Government says if they were exhausted, then we ought to remand the agency. Well And I'm having difficulty figuring out what's your position on that. If they were exhausted, it seems to me that it's because the agency actually ruled on them and there's no reason to remand them. Yes, and we generally would agree in our position is that they are exhausted. My ultimate answer is going to be that we would not oppose a remand, and I'll explain why. Oh, yeah, tell me why remand. Well, because there's been a great amount of intervening case law, even since the Board of Immigration kills me, their determination. I mean, our case, our argument regarding attempts being co-extensive with the not being, excuse me, not being co-extensive with the federal definition rests mainly on DECOM. But DECOM also has been applied for the last several years, including in MAFIS. All of this elaborates on that intent. Tell me how, because I had some difficulty understanding your argument. All DECOM says is that there are some crimes that are categorical. There are some crimes in which we have to use a modified categorical analysis because it's divisible statute. Right. That's not an issue in this case. Well, no, it's slightly different, but the concept, the essence of DECOM, which is carried on in MAFIS, is this concept of certainty. Right, but we just need to figure out whether or not the errors are in line. It's a categorical match for the federal generic crime, right? Right. DECOM doesn't, well, DECOM doesn't help us with that. DECOM just says there are some crimes for which, say, crime is divisible, and then you therefore have to perform a modified categorical analysis. In others, it is not. You must perform straight categorical analysis. We all agree this is a straight case. Right. Yes, but, so, the essence of a breakdown that we concern here, our position is that the court needs to reconsider U.S. v. Taylor, correct? Can we reconsider U.S. v. Taylor? Well, you can if it's duly irreconcilable with intervening Supreme Court authority. But how did we come out the same way after DECOM? I'm sorry, can you repeat that? How did we reaffirm Taylor after DECOM? In Alorado v. Holmer, you didn't reach the issue because it wasn't exhausted. I'm not aware of a precedent decision where it was specifically considered and reaffirmed under the same arguments that are presented here. What is it, correct? I guess what I'm thinking about is we found the Arizona definition coincides with the federal definition, right? In U.S. v. Taylor, yes. All right, Gomez. In Gomez, in which the, we found? We found that, you know, the any step part of the Arizona statute doesn't take you outside the federal generic definition. Right, it is, I'm sorry, I'm just going to double check my case law, but are you referring to? I'm looking at U.S. v. Gomez, which is a 2014 case. Right, and I don't have the case in front of me, Your Honor, so I apologize, but I'm not sure that that case necessarily addressed the merits of the argument, or did it prefer passing to U.S. v. Taylor? Well, I'm not talking about the single offense in both cases right now. I'm just talking about the Arizona generic definition. I thought we held both before and after DECOM, and this is a categorical matter. I would have to specifically look at Gomez, but I was not aware of a decision, of a case in which the issue was more like put before the court that U.S. v. Taylor should be reconsidered. No, I mean, they're fair. There could not have been an argument that we should reconsider. But we have a subsequent, we have a post-DECOM case. Yes. Use the intent of the statute and say that it's a generic item. I believe it's been cited to a passing reference, but I don't think it has been more like put before the court. Going back to Judge Gamby's question, if we've said it post-DECOM, is that in the bank issue? Can a panel really say, even though another panel applied it post-DECOM, they were wrong? I think it goes back to the question of whether the argument that we're putting before the court was actually put before the court in those other decisions, or whether there was a passing citation. You know, we are arguing that subsequent intervening in a Supreme Court case law is irreconcilable. And, again, if I can get back to the point, it comes down to this concept of certainty, because what the panel did in U.S. v. Taylor, and the part of that decision that's irreconcilable, is before it held, before it made that essential holding of it being co-extensive, it had to decide that it was permissible in making that determination to rely on intermediate appellate court decisions in the lack of a Supreme Court reformated decision by the Arizona State Court. And that's what's really irreconcilable with DECOM, and even more clearly with MASIS. So, your position is that MASIS requires that there be a decision by the state court? By the state Supreme Court? By the state Supreme Court. Yes, it definitely reinforces that, because it comes down to what DECOM was doing, and it was reminding the circuit courts of the underpinnings of the entire category. So, in the absence of an Arizona Supreme Court decision, which will never happen, because they'll never be compared with the shared defendant definition, they'll only be interpreted with the state definition, but in the absence of an Arizona Supreme Court decision interpreting the state definition of attempt, your view is that there can never be a categorical measure? Yes, as long as there's any ambiguity above or below, because... That's your position? Yes, that is my position, yes. But our position is not that the Arizona State Court has to decide whether it's coexistent with the federal definition, but it has to come out with a clear decision that any step actually doesn't mean what it says on its face, it actually means it's more akin to something like a substantial step. As the 10th Circuit cited, we cited an unpublished decision in Arizona that was after U.S. v. Taylor, where the court specifically says that any step is far short of a substantial step, so that the body of Arizona case law is not entirely clear, and that lack of clarity is a problem. What the court did in U.S. v. Taylor was say that it can use the terms realistic probability, right, and this is the test that's used by the Supreme Court in joining us in Alvarez, where a statute on its face appears to be a categorical match, the court can look to state court decisions that show any realistic probability that it's applied in a non-generic manner. But the question is different when the statute on its face is overbroad, and that's not the question, whether there's a realistic probability that's inadequate. Your position is that this statute might be interpreted as any step, even though it's substantial. Well, it has in at least one of them. Well, it has in an unpublished and a non-fetched decision. Which shows the lack of certainty, and what did come in Matthews' reply, is that for an individual to be connected to a non-generic offense, their crime didn't necessarily rest on the element that's generically defined in here. There's not a certainty. Without the authoritative Supreme Court decision weighing in on it, there's a lack of certainty, as long as there's a lack of clarity in the intermediate appellate court decisions. If this case gets remanded, what's your best case to report? I'm sorry? If this case gets remanded, what's your best case to report? In terms of the attempt argument? Well, I think it'd be a collection of cases, but I think Matthews is certainly important, and that's part of why we wouldn't necessarily oppose a remand. Generally, this is a question of law. And the board doesn't have a special authority in terms of interpreting state court criminal law. But this court, Alvarado, did take case to point out that the board would be competent to make that assessment. So in light of that, combined with the intermediate case law, we wouldn't necessarily oppose. But this court would be within its authority to make the decision without a remand. Thank you. We've got a little bit of time left for a vote. We'll hear from the Court. Thank you. It would be helpful to hear from you. Thank you. First of all, can I ask you a question? Of course. Of course. I'm going to change the author for the respondent. The arguments presented in the petitioner's opening brief to this court are fundamentally different from the briefs that Mr. Muth, through counsel, presented on appeal to the board. Well, it doesn't matter. It's not a real case law. When you get a pro bono affirmation that exhausts not only the issues raised in the briefs, but the issues raised to the image, do you disagree? I do not disagree. Okay. So I've gone through all the arguments. I think I found one that wasn't raised somewhere, but the BIA actually addressed it. Why is this? Why is there an exhaustion of the pro bono argument? At no time before the immigration judge, excuse me, either in the motion to terminate or even before the immigration judge, in his brief on appeal to the board, did Mr. Lu make any argument that the Arizona State statute was an overbride, that it was not going sensitive to the federal statute. He also made- But didn't the BIA find that there was a comment? The IJ found that there was. Yeah, right. So that issue was litigated before the IJ, wasn't it? The IJ rendered a statement on that issue, but Mr. Lu never made any argument that challenging that finding. Well, but then the BIA upheld that finding, did it not? Again, without any argument. Right. So I'm having a difficult time figuring out why that argument wasn't exhausted. If both the agencies below actually ruled on it. Normally, when we get exhaustion arguments, it didn't give anybody a chance to rule on it. They both ruled on it and reached their conclusion. To be honest, I have to think, right, well, that's a separate issue. Why wasn't it exhausted? They certainly ruled on the issue. The IJ ruled on the issue. The board adopted and affirmed the issue. But the agency never considered the arguments that this board is being asked to consider. And bravado is a special form of decision. And we are aware of the case law that says that when the board issues a bravado decision, any issue it addresses on the merits is deemed exhausted. The IJ did, the president of the board, did not issue a decision on the merits regarding attempted civilian activity. It was decided that it was kind of an anti-darkness statement, not a considered statement, therefore it doesn't count. Well, it's in the IJ's. I think, right, what the IJ did was intentionally going through the analysis and determining that attempt under the Arizona statute, under the Fair and Equal statute were a match. But on appeal to the board, Mr. Lu identified 37 different allegations of error. He asked the board to consider 37 different questions. This wasn't one of them. We all agree that this brief to the board doesn't control the board. We have case law in the Ninth Circuit that says, we looked at the full record to see whether the question was raised. I'm looking at the IJ's opinion. It's just, it's exactly the argument you make on appeal. It's disturbing whether a conviction qualifies. We apply the categorical approach of Taylor. Taylor says that this is the Arizona statute, but they do so generically, and the PIA affirms. So what is the exact issue that the other sides are arguing? Is the TDOC for us to be able to do that? Are these decisions collateralized? Right. Our concern is that when the board, we do not want a bravado decision to effectively start the clock over for a petitioner that she isn't able to raise a new argument, never raise a new issue. Correct. They should not get a do-over simply because the board decided to issue a bravado decision that they get to go through the record and say effectively, well, these 37 arguments I raised were not successful, so let me try some new arguments. I'm having difficulty with your arguments. They're close. These are not removable offenses. I think this is a categorical match, right? Correct. And the IJ says it's a categorical match because the Arizona definition matches the federal generic definition. And the PIA affirms. Correct. It's a central issue. Excuse me. And it was litigated in front of the agency. And now the party is out here saying, well, we lost. Don't we think we were wrong? That was wrong. And so I'm just having difficulty figuring out how it was that they came up with a new argument when this is a central issue. And I understand your concern. And our concern is that these attempt arguments in particular, while the IJ decided those issues in applying the Taylor-Shepard categorical modified categorical analysis, the IJ applied the law, made his determination. But Mr. Blue never, not once, ever contested contempt. He's always been arguing other issues. So what's our issue today? Just, I mean, you're taking up all your time on this. Let me ask you a different question. Let's assume that these arguments were exclusive. The argument is now presented to us as an issue for review. Is it the government's position that we ought to remand under those circumstances? Because if so, it seems to me you're holding hands, and maybe we don't have a context here. In our reasoning, we've argued for a remand if the court determines that these issues have been exhausted to preserve the penalties. It is sort of a strange turn of the rebar or stuff. You don't argue the parents, do you? Correct, because we did not feel that we could argue the parents without engaging in a generic violation. These specific arguments were never raised. It's the analysis. As a bit of advice, it seems to me if their argument is preserved through the rebar, we don't have a generic violation, as you say. We don't think so, but if it was, we stick with it. I'm not sure how I see a generic violation there. But here's my difficulties. The AFL-I was aggressive in the urgency of this argument, and it actually affirmed the district of the IJ's decision. So I'm still having some difficulty figuring out why we need a remand if we have a remand. But you didn't argue the parents. Who wants a remand? She wants a remand. But you only said you have signs that you could agree to remand. I'd need to call back to Washington. But certainly, I mean, we always would prefer a remand. But we also acknowledge that the agency has no particular expertise in these issues. This court does not defer to the agency's interpretation of criminal matters. But we would always prefer to preserve the agency's legislative authority. And also, as counsel noted, there have been a number of changes. The agency would welcome the opportunity to apply the MATHIS framework, which is the elements against us. Is that true? I don't understand. Why would that be true? I don't think that would be true. Why would that be true? Would it be true? No, it would go back to the board. The board would likely provide the opportunity to use an opportunity to provide supplemental briefs, because counsel can present these arguments to the board, the board can issue whatever decision it feels appropriate, having had an opportunity to consider these arguments. So as I understand the petition for the review, it turns entirely to the board of justice, you are trying to quote-unquote match. Do you agree? I agree. Because it implicates all the claims. So that's the only argument I think we have in the petition for a review. It's not a counter-quote-unquote match, and therefore there is legal consequences for that. Yes. And so that's the only issue. Yes. You think the agency should address that in the first instance? We would prefer that the agency address that in the first instance. Why? We recommend that this board has the authority to decide that issue in the first instance. If the court determines that the issue has been caused to that We would prefer, obviously, that the court determine that these issues were not sufficiently raised to the board on appeal or before the IJ. Let me just focus. Your position is that even though this is a central finding, the agency, the board, had to make. Because Mr. Lu didn't contest that finding on the same basis that he's now contesting it. It wasn't exhaustive. Is that a fair summary of your position? Correct. Yes. Correct. Okay. Thank you. Thank you. Why don't you address that last point, as you understand it. In other words, why didn't Mr. Lu argue below or give that this was not a categorical match because Taylor was no winner? I would like to address that point. I quickly would like to clarify that there are a couple of issues that I believe we do assert are brief that are apart from this generic, you know, categorical match question. Including particularly serious crimes, you make a credibility argument to the immigration judge in protection under the convention against torture. Neither of those necessarily depend on our argument that in today's convention. Well, particularly serious crimes you would prevail on if this was not a categorical match, right? Yes, but that is not the only argument. The alternative argument was that the immigration judge erred in making a negative credibility finding in terms of the conviction, what happened in regard to the conviction. And the petitioner's testimony is incredibly fair to say that there is no involvement of trafficking, which would also take responsibility for crime out of it, which is a serious crime. Yeah. Yeah. Because we put you there, I would like to listen to what you have to say at the time, but if there is a categorical match, Well, there would still be the exceptions as laid out by the attorney general and YL. And the petitioner's conviction basically meets every single one of those, except for arguably the question about whether he had a peripheral involvement and if his testimony is actually credible, contrary to the immigration judge's opinion, that he would believe that he was growing marijuana for his own personal use. And that would involve at least a peripheral role to any type of drug trafficking, if not completely taken out of the realm of it. So that would still leave the possibility of the court finding not a particularly serious crime, even under a matter of YL. Let's get back to this point. Did you argue to the IJ or the BIA that Taylor was the Lord and Good Lord? Well, it was different. He did not. No, he did not. But a few points on that. First of all, this court's case law doesn't require eloquent or precise arguments. The question is whether the board was put on notice. And when you look at the case as a whole, this is not the type of case where an individual embraces and argues one issue, say 212C, to the complete exclusion of another, withholding a removal. This is an issue where the brief, albeit inartfully, is circling around the same issues that are presented in this appeal, and he specifically challenges, if they're challenging removability, specifically says he should be eligible for asylum. And the board was apparently put on notice, which is the question, that he was challenging the immigration judge's decision in its entirety because not only do they cite the matter of bravado, but they claim to take pains to repeatedly note that they're affirming all of the IJ's holding, and then go into some additional analysis under the same headings that we provide to this court, whether it's an aggravated felony, whether it's a particularly serious crime. So he was put on notice. I understand your argument. Thank you both sides. The case is submitted.
judges: Siler, Canby, Hurwitz